# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| CLARENCE A. STOKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:09-CV-194-TS |
| | ) | |
| AGING AND IN-HOME SERVICES OF | ) | |
| NORTHEAST INDIANA and | ) | |
| SENTRY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is a Motion for Summary Judgment [DE 23] filed by Defendant Aging
and In-Home Services of Northeast Indiana (AIHS). The Defendant seeks summary judgment on
the Plaintiff's claims asserted under Title VII of the Civil Rights Act of 1964 (Title VII), the Age
Discrimination and Employment Act (ADEA), the Americans with Disabilities Act (ADA), the
Rehabilitation Act, 42 U.S.C. § 1981 (§ 1981), and the Indiana Whistleblower statute. The
Motion is fully briefed and ripe for ruling.


## PROCEDURAL BACKGROUND

The Plaintiff filed his Pro Se Complaint [DE 1] on July 16, 2009, alleging various
Constitutional and other violations resulting from an incident where he was fired from his job as
a delivery man with AIHS after suffering a non-work-related arm injury.[1] The Defendant filed its
Answer [DE 18] on August 21, 2009. The Defendant filed the instant Motion on October 9,

---

[1] Sentry Insurance Company is also a Defendant in this lawsuit. Sentry has neither joined in AIHS's Motion
for Summary Judgment nor filed a dispositive motion of its own. Therefore claims against Sentry and facts
pertaining exclusively to those claims will not be discussed in this Opinion and Order.

2009, the Plaintiff responded on October 19, and the Defendant replied on November 13. The case took an unusual procedural turn on December 7, when the Court issued on Order [DE 45] allowing the Plaintiff to amend his original Pro Se Complaint. The Court then granted leave for each party to supplement its briefing on the Motion for Summary Judgment to reflect the changes in the Pro Se Complaint.[2] Each party has now supplemented its briefing.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that motions for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *AA Sales & Assocs. v. Coni-Seal, Inc.*, 550 F.3d 605, 608–09 (7th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Rule 56(e)(2), a party opposing a properly made and supported motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The evidence the nonmovant relies on must be identified with reasonable particularity and must be "competent evidence of a type otherwise admissible at trial." *Bombard v. Fort Wayne*

---

[2] This case, originally assigned to Judge Robert L. Miller, was transferred to this Court on December 21, 2009.

*Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996); *see also Powers v. Dole*, 782 F.2d 689, 696 (7th Cir. 1986) (stating that when evidence is offered through exhibits on a summary judgment motion, those exhibits "must be identified by affidavit or otherwise admissible").

A court's role on summary judgment is not to weigh the evidence, make credibility determinations, or decide which inferences to draw from the facts, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 255; *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A material fact must be outcome determinative under the governing law. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598–99 (7th Cir. 2000). Although a bare contention that an issue of fact exists is not sufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *See Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000). Pursuant to local rule, the Court is to assume that the facts claimed by the moving party and supported by admissible evidence are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion and supported by admissible evidence. N.D. Ind. L.R. 56.1(b).

Finally, the Court gives a "liberal construction to [the] pro se pleadings," *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008), and the Defendant has met its obligation to give a *Timms*[3] notice to the Plaintiff that it was filing a motion for summary judgment and to explain the Plaintiff's resulting responsibilities.

---

[3] *Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992).

## FACTS

Viewing the submitted evidentiary materials in the light most favorable to the Plaintiff, the Court finds the following facts.

From December 1999 until September 15, 2006, The Plaintiff was employed as a driver for AIHS. His job responsibilities primarily consisted of delivering meals from AIHS to its clients. Stokes also operated the ovens on occasion and prepared food for his deliveries. Stokes began his employment as a part-time worker, but was elevated to a full-time employee sometime in 2006. On August 25, 2006, Stokes presented AIHS with a medical slip from Orthopaedics Northeast, which indicated that Stokes was not to have use of his left arm.

September 7, 2006, was the last day that Stokes went in to work for AIHS. On that day, Stokes received a memorandum from Gail Haver, the Nutrition Director at AIHS, informing Stokes that AIHS could not make any accommodations for one-armed work, and that Stokes could not come into work any more.[4]

On October 4, 2006, AIHS sent Stokes a letter reiterating that no accommodation could be provided to him because the use of both of his arms was needed to safely operate AIHS vehicles. AIHS also indicated that once the medical restrictions were lifted, AIHS would give consideration to permitting him to return to work as a substitute driver if positions were available. At an uncertain date in April 2009, Stokes had recovered and contacted AIHS about a driver position. He was informed that no position was available and that he could reapply in the future. AIHS wrote Stokes on April 14, 2009, and again on May 4, 2009, reiterating that Stokes

---

[4] While the parties dispute when Stokes' employment was legally terminated, they do not dispute that Stokes knew that AIHS was not permitting him to work effective September 7, 2006, and that Stokes did not come to work after that date.

was eligible to be rehired.

Stokes filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on May 11, 2009. The EEOC issued a Dismissal and Notice of Rights to Stokes on June 5, 2009, because his charge had not been timely filed.


**ANALYSIS**

A liberal construction of the Amended Complaint shows that the Plaintiff alleges six discrete causes of action. In its Motion for Summary Judgment, the Defendant attacks four of these claims under a procedural theory. This Court's analysis will first address the procedural arguments, and will then separately address the § 1981 and whistleblower claims on their merits.


**A.      Procedural Arguments**

The Plaintiff's claims under Title VII, the ADEA, and the ADA all turn on whether he timely filed a Charge of Discrimination with the EEOC. The Court will address this issue first. The Court will then address the Plaintiff's Rehabilitation Act claim, which the Defendant contends is time-barred because it was filed after the date allowed by the applicable Indiana statute of limitation.


**1.      EEOC-Related Claims**

It is undisputed that the Plaintiff did not file a Charge of Discrimination with the EEOC

until May 11, 2009.[5] However, to bring a lawsuit under Title VII, a Plaintiff is required to file a Charge of Discrimination with the EEOC or an equivalent state agency within 300 days after the alleged discriminatory event. *Dandy v. United Parcel Serv., Inc.* 388 F.3d 263, 270 (7th Cir. 2004). Failure to timely file precludes a subsequent action under Title VII. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860 (7th Cir. 2005). In this case, the Charge of Discrimination was filed more than 30 months after the last possible discriminatory action, and any Title VII claims are time-barred.

In order to pursue a claim for discrimination under the ADEA, a Plaintiff is required to file a Charge of Discrimination with the EEOC within 180 days of the alleged unlawful action. 29 U.S.C. § 626(d)(1). Failure to timely file the Charge of Discrimination with the EEOC bars any claim under the ADEA. *Ajayi v. Aramark Bus. Servs, Inc.*, 336 F.3d 520, 527 (7th Cir. 2003). As the Plaintiff did not file with the EEOC until years after the alleged unlawful action, his claims under the ADEA are time-barred.

Finally, in order for a claim under the ADA to be timely, it must be filed with the EEOC within 300 days of the last alleged act of unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117 (Title VII's charge filing requirements apply to ADA claims). Failure to timely file with the EEOC bars any claim under the ADA. *Carey v. Milwaukee Bd. Of Sch. Directors*, 80 Fed. Appx. 492, 493. Therefore the ADA claims, too, are time barred.

## 2.     Rehabilitation Act Claim

---

[5] The date of the Plaintiff's discovery of the alleged tort may be in dispute. While the Defendant contends that the date is September 7, 2006, a liberal reading of the Plaintiff's Complaint suggests the date of October 4, 2006, when AIHS contacted him about potential future employment. The disparity between the dates is not legally significant in this analysis because even the October 4 date falls outside of the applicable statutes of limitation.

In contrast to the other statutes under which the Plaintiff is suing, the Rehabilitation Act does not require a plaintiff to pursue any relief through the EEOC prior to filing a civil complaint. *See* 29 U.S.C. § 794a(a)(1) (adopting the remedies, procedure, and rights set forth in 42 U.S.C. § 2000e-16, including 42 U.S.C. § 2000e(f)–(k), which does not incorporate the requirement that a charge be filed with the EEOC). Since the enforcement provisions for the Rehabilitation Act contain no time limitation, the Court will look to the "[m]ost appropriate [statute of limitation] provided by state law." *Johnson v. Railway Express Agency*, 421 U.S. 454, 462 (1975). "The statute of limitations for Rehabilitation Act claims is governed by the limitations period for personal injury claims in the forum state." *Untermeyer v. College of Lake County*, 284 Fed. Appx. 328, 330 n.1 (7th Cir. 2008). Thus the Court will use the two-year statute of limitations set forth in Indiana Code § 34-11-2-1, which Indiana courts apply to claims made under the Rehabilitation Act. *See, e.g.*, *Andrews v. Cons. Rail Corp.*, 831 F.2d 678, 683 (7th Cir. 1987).

In this case, the Plaintiff did not file his Rehabilitation Act claim within two years from the last possible date of his termination. As a result, his Rehabilitation Act claim is time-barred, and summary judgment will be granted as to it.

### 3.    Time-Barred Defenses

In his pleadings, the Plaintiff asserts two defenses of sorts to the Defendant's contentions that the above-mentioned claims are time-barred. He argues first that the operative date for the purposes of this litigation is sometime in April 2009 because his claims derive from AIHS's continuing violations, or, alternatively, because he was under a legal disability at the time of

AIHS's violation.

## A. Continuing Violation

Liberally construed, the Plaintiff's response brief indicates that he may be arguing a theory of continuing violation to show that the October 4 date does not apply, and that the applicable date is instead some time in April 2009, the time when AIHS told him he was eligible to be rehired, but that no jobs were available. He refers to a "concoction" or "scheme" that was devised by AIHS in August 2006 and "manifested" in 2009, and seems to be arguing that because his termination was a mere part of the Defendant's discriminatory plot that continued into 2009, his litigation should not be time-barred. However, the law is clear that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Moreover, "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination . . . constitutes a separate actionable unlawful employment practice." *Id.* at 114. In this case, it is undisputed that the Plaintiff's cause of action relates to his termination. As the last possible date of his termination was October 4, 2006, a continuing violation theory will not save his time-barred EEOC-related claims, and the Court will grant summary judgment on them.

## B. Legal Disability

The Indiana Code states that "[a] person who is under legal disabilities when the cause of action accrues may bring the action within two (2) years after the disability is removed."

Ind.Code § 34-11-6-1. The Plaintiff argues that the injury to his arm constituted a legal disability, and that the two-year clock should only have started running when his arm was healed. However, Indiana courts have consistently held that the only legal disabilities that may extend the statute of limitations are "incompetence, minority, imprisonment, nonresidency under certain instances, and fraudulent concealment." *INB Nat'l Bank v. Moran Elec. Serv., Inc.*, 608 N.E.2d 702, 707 (Ind. Ct. App. 1993).

The Plaintiff does not allege, nor is there any evidence in the record to suggest he suffered from any of those disabilities. The physical disability that the Plaintiff claims is not applicable to the legal disability contemplated by the Indiana statute, and will not preserve his claim in this instance.

**B.      Merit-Based Arguments**

The Plaintiff also alleges two claims that are not time-barred. The Court will address the Plaintiff's § 1981 claim and his whistleblower claim, respectively.

**1.      Section 1981**

A claim under § 1981 includes the same elements and employs the same analysis and methods of proof as a Title VII claim. *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334 (7th Cir. 2002). Therefore, the Plaintiff may prove his race discrimination claim by either the direct method of proof or the indirect method of proof. "Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer *without reliance on inference or presumption*." *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir.

2003) (emphasis added). In short, "[d]irect evidence essentially requires an admission by the decision-maker that his actions were based upon prohibited animus." *Rogers*, 320 F.3d at 753. A plaintiff can also prevail under the direct method of proof by constructing a "convincing mosaic" of circumstantial evidence "that allows a jury to infer intentional discrimination by the decisionmaker." *Rogers v. City of Chic.*, 320 F.3d 748, 753 (7th Cir. 1997). That circumstantial evidence, however, "must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

In this case, the Plaintiff does not meet the showing required by the direct method of proof. In fact, aside from the Plaintiff referencing § 1981 in a list of legal theories under which he is suing, the Court is unable to find any mention of racial discrimination anywhere in the Plaintiff's Amended Complaint or summary judgment submissions. Therefore the Court finds that the Plaintiff has not provided evidence on this claim that can satisfy the direct method of proof.

If a plaintiff cannot prevail under the direct method of proof, he must proceed under the indirect method of proof. Under the familiar *McDonnell Douglas* burden-shifting framework, a plaintiff can make out a *prima facie* case of discrimination under the indirect method by showing that (1) he is a member of a protected class; (2) his performance met his employer's legitimate expectations; (3) despite this performance, he was subjected to adverse employment action; and (4) his employer treated similarly situated employees outside of the protected class more favorably. *Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 559 (7th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). If the employee establishes this *prima facie* case, the burden shifts to the employer to "articulate a legitimate, non-discriminatory

reason for its action." *Barricks*, 481 F.3d at 559. If the employer does so, the employee then has the burden to prove that the reason for its action was a mere "pretext for discrimination." *Id.*

In this case, there is evidence that the Plaintiff is a member of a protected class. There is also evidence that he was terminated, which qualifies as an "adverse employment action." However, there is no evidence in the record that would suggest that the Plaintiff met his employer's legitimate expectations, nor that his employer treated more favorably similarly situated persons outside of the protected class. The only evidence before the Court relating to the Plaintiff's job performance is that he was unable to perform his duties as a driver after losing the use of his arm. Similarly, there is nothing in the record to suggest that similarly situated persons outside of the Plaintiff's protected class were treated more favorably. In all of his briefing, the Plaintiff never addresses that issue, and the Court therefore finds that the Plaintiff has not made out a *prima facie* case under the indirect method of proof.

As the Plaintiff has not made out his *prima facie* case, this Court need not proceed further under the *McDonnell Douglas* analysis. *See Paluck v. Gooding Rubber Co.,* 221 F.3d 1003, 1011 (7th Cir. 2000) ("Because we hold that [the Plaintiff] has failed to make a prima facie case, we need not address the question of whether [the Defendant's] stated reason for the termination was in fact a pretext."). Therefore the Court will grant summary judgment as to the § 1981.

## 2. Indiana Whistleblower Statute

Liberally construed, the Plaintiff's Amended Complaint alleges whistleblower claims

against the Defendant.[6]  The Indiana Whistleblower statute, Indiana Code § 22-5-3-3 provides, in

pertinent part, "(A) An employee of a private employer that is under public contract may report

in writing the existence of: (1) a violation of a federal law or regulation; (2) a violation of a state

law or rule; (3) a violation of an ordinance of a political subdivision . . . or (4) the misuse of

public resources."

In this case, the Plaintiff's advice was admittedly limited to "sav[ing] the meal program

funds" due to what he perceived as ineffective management. However, Indiana courts have held

that "misuse in the context of IC 22-5-3-3 does not include allegations of ineffective

management style that might result in increased administrative costs to the employer." *Coutee v.*

*Lafayette Neighborhood Housing Servs.*, 792 N.E.2d 907, 914 (Ind. Ct. App. 2003). The

Plaintiff's Amended Complaint, liberally construed, merely alleges ineffective management and

does not rise to the level of a violation of a federal or state law or regulation, a violation of a

political ordinance, or the misuse of public resources. As such, summary judgment will be

granted as to the whistleblower claim.

## CONCLUSION

For the foregoing reasons, the Defendant is entitled to summary judgment on all of the

Plaintiff's claims. Therefore the Defendant's Motion for Summary Judgment [DE 23] is

GRANTED and Defendant Aging and In-Home Services is dismissed from this lawsuit. Sentry

Insurance Company is the only Defendant that remains in the litigation.

---

[6] Among other things, the Plaintiff notes that he had complained to his supervisors about "the way the meal[s] were being prepared, the appearance of the meals and . . . the way the meals were being delivered to the clients during . . . delivery."(Am. Comp. at 6). As a result of this inefficiency, the Plaintiff "was giving advice to help the nutrition department function better and save the meal program funds." *Id.*

SO ORDERED on March 12, 2010.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT